Good morning, Your Honors. May it please the Court, Anna Barvaire for Appellant's Junior Sports Magazines. I'd like to try and reserve three minutes for rebuttal. Through the adoption and enforcement of Assembly Bill 2571, the State of California has chosen to ban all firearm industry members from engaging in speech that promotes firearm-related products. This includes firearms, ammunition, and all sorts of accessories that can be used in conjunction with the carry or use of a firearm. If that speech constitutes advertising or marketing, that might reasonably appear to be attractive to minors. In doing so, California has enacted a very broad ban on pro-Second Amendment speech about items that are entirely lawful to use and possess in California, even by minors. In service of California's purported interest in ferreting out the unlawful sale of firearms to minors, this speech ban is hopelessly over-inclusive while also being under-inclusive, vague, and thus chilling. This fact is fatal to the State's case, no matter what level of scrutiny applies. That is because AB 2571 cannot survive even the slightly more forgiving test for commercial speech under Central Hudson, because AB 2571 is not in any way appropriately tailored to this public legitimate interest that California has put forth. And that is by design, because, let's be real, AB 2571 was never really about preventing the unlawful sale of firearms to minors. The legislative history is chock-full of references to the primary impetus for the law, that is, animus for gun culture and firearm industry members specifically, and a bare desire to thwart the passing down of pro-gun messages to our future generation of shooters. We can look at the excerpts of record, starting on page 1028. I think we ought to not necessarily get into the public, that kind of thing, if you want to win this case. What I want to get into is, why isn't this commercial speech? Commercial speech is certainly speech that is an advertisement, speech that refers to a particular product. The speaker has an economic motivation in speaking it. It's right out of Hunt v. City of Los Angeles. It seems to me this is an easy case for commercial speech. There obviously, AB 2571 does restrict commercial speech, but appellant's theory of this case is also that it necessarily ties in pure speech, because as my clients, especially junior sports magazines and our Second Amendment organizations like CRPA and SAF, the events that they participate in that involve pure speech, that pure speech is basically paid for by this commercial speech. If junior sports magazines cannot sell advertising about firearm-related products, and we're not just talking about firearms here, we're talking about sights and holsters, portable gun cases, gun safes, for instance, all of those things, then it can't really exist. Magazines rely on traditional advertising, including that which is banned by AB 2571, in order to publish pure speech. As the record shows, junior sports magazine could have done two things. It could have decided to stop taking those ads altogether, and then because this is a national, this is a magazine with nationwide distribution, if it stopped doing those ads altogether, that's a substantial amount of its revenue, risks shutting down the magazine altogether, or as it chose to do, keep the advertising. So you're saying mixed motive? Correct. It necessarily attacks both. I understand your argument. The reason I ask you that to begin with, supposing that I suggest that in my review of this, and this is a de novo review now as to whether it's commercial speech or not, I think it's commercial speech. So then at that point, it seems to me that you need to address the other issues that would be outlined in Central Hudson, because to go on about your mixed motive is not going to help you much if I'm on a commercial speech path. So what about, is it lawful, is it truthful? Yes, your honor. Because then I have to ask those two questions to get to the final three. That's correct. And those are legal conclusions, right? That's correct. Lawful and truthful? That's correct, your honor. And it seems to me that there is some lawful sale, or there would be some lawful advertising, and if there's some lawful advertising, then it would be lawful speech. That's correct, your honor. And it seems to me there'd be some truthful advertising, so therefore we would get to So then we would go to the last three prongs of the Central Hudson test, correct? Yes, your honor. And then we get to a substantial government interest. Correct. Is it a legal conclusion that it is a substantial government interest, or is it a factual conclusion? That's a good question. I think... The reason I ask it is, we're on preliminary injunction here. Correct. Abuse of discretion analysis. If this is not legal, then how much is it an abuse what the district court did? I think the response here is twofold. First, I think this is not a strictly legal or factual question, and since it's a mixed legal and factual question, it is... What case says that? Oh, I'm not sure, your honor. I don't think there is one. Regardless, even if plaintiff appellants concede that this is a substantial government interest, plaintiffs obviously argue, and we think this is all pretext, and we can talk more about that later, but even if we concede and the court accepts this interest in preventing the unlawful sale of firearms to minors and preventing gun violence, we would obviously concede that under any test, that's a substantial government interest. It comes down to then whether or not California has shown that the harms it's reciting are real and that the ban directly and materially advances it, and is no broader than necessary. So we're down to, does it directly advance the interest, right? Correct. Is that what you're arguing? It's one of the things... Is that a legal conclusion? I think it is. Or is that a factual determination? Because if it's factual, I have an abuse of discretion standard. That's right. But I don't... And we have a judge who had the original decision to make, who made that decision, and how much am I bound by what the judge did? If it's an abuse of discretion, then I've got to say, he got the law wrong on that, or it was so outlandish, his idea of the facts, it wouldn't hold up. Whereas if it's a legal conclusion, I can substitute my opinion for it. That's why I wanted your good help. Thank you. I think no matter which way you hold abuse of discretion, or this is a factual question or if it's a legal question, the result is the same, right? Because, excuse me, it would be an abuse of discretion for the court to get the law wrong, right? And I think... I don't know that they got the law wrong. I would think that, respectfully, I think they did get the law wrong. What case would suggest that the way they applied that law is wrong? So the court... So the state is pushing a theory that they are allowed to, that they have a... And it bases that theory on a number of cases that the district court adopts in its decision. Cases like Edge Broadcasting, Coyote Publishing, Act Media, and 44 Liquor Mart. These are all cases, of course, that deal with tobacco, brothels, gambling, alcohol, things that minors are not allowed to use or possess at all. As opposed to a case like this one, which is more like Cary v. Population Services, where we're talking about an unconstitutional ban on contraceptive advertising that went to both minors and adults. And so this case, AB 2571, suppresses similarly information about the availability and price of constitutionally protected products that minors in California may possess legally under supervision or the permission of a responsible adult. So the court, in relying on cases about tobacco and brothels for speech to minors, was at abuse of discretion. It should have been looking at Cary, which when we're talking about contraceptive advertising, which is about a constitutionally protected product that's lawful for minors to use. If California changed its laws and said minors can't use guns for hunting, shooting competition, et cetera, as it currently allows, would they be allowed to pass a law like this? They may be able to get through with that under cases like edge broadcasting, but then you obviously run into a clear Second Amendment violation, and then we talk about the Second Amendment violation, and then if they're violating the second, then are they violating the first also by doing so? So then the last one, is it more extensive than necessary? And again, my question is, is that a legal conclusion, or is that a factual conclusion? Because my colleagues and I can only stick our nose in if it's legal, unless they have abused their discretion, the district court, in some way. Our position is that... I'm not really telling you where I'm thinking, I just want your view on this. Our position, our view, is that these are legal questions, right? Applying these legal tests... I wish you had a case to tell me. I'm sorry, Mr... I wish you had a case that said the same thing you're saying. I think what I'm trying to get at is the cases, the Supreme Court cases dealing with these types of speech tell you where to go with how broad these restrictions can be on speech when you're dealing with constitutionally protected products, and speech to minors and to children, not speech that they've actually read, or speech that is directed to them. It includes speech to an adult like myself, who might be willing to look into buying a firearm-related product for my minor daughter to use under my watchful eye, in accordance with California's laws, and she's never seen the speech, but because it's maybe a pink handgun with a Hello Kitty attached to it, that speech, to me, as an adult, is illegal under AB 2571. And I think... Excuse me. And I think because we see... Because just the very... Looking at the law on its face, we can see that it directs... It targets speech that's directed not just to children, but as adults, who might be purchasing firearms for themselves, purchasing them for their minor children, or even to speech for  The case law is very clear that this is too broad. In all applications, this law is too broad to be... To survive the central Hudson test. We also... I also want to talk a little bit about plaintiff's equal protection claim, right? We're looking at a case of a law that was obviously driven by animus for the firearm industry, with this... While they have a public-facing interest, the state claims, in preventing the unlawful possession and purchase of firearms by minors, we can see in the legislative history the real impetus was this animus. There's lots of talk about, in the legislative documents, about the problem of indoctrinating our future generations into the gun culture. And then you have exemptions for... Equal protection. Who's the protected class? This is not a case about a protected class, Your Honor. This is about one of two things. This is an equal protection claim about discrimination in the... But what class is not protected equally? This is about discrimination... Why is it an equal protection class? An equal protection claim based on the exercise of a fundamental right, or based on animus driven toward an identifiable group. In this case, obviously, it's the firearm, what do they call them, firearm industry members. And because there's... To me, if we're going to go back to equal protection, and I'm not trying to avoid it, I'm just trying to say, if we're really going to say it's a commercial transaction, we don't really need to talk about an equal protection argument, do we? If Your Honor would... And that would elevate it to strict scrutiny. That's the reason you're coming back to that argument. Respectfully, that would... My position on it being about animus based on disdain for the firearms industry, that's rational basis. And because it's animus, there's no legitimate purpose. But if we're going on a preliminary injunction, we've talked about... It seems to me you're saying you're going to win on this, so we would have met the first part of the preliminary injunction winner factors, and that seems like you got a good case. So then irreparable harm, what irreparable harm is there? Under an equal protection analysis, Your Honor? No. On any of them? Obviously... Come back to commercial speech. Okay. Sorry. Obviously, the direct and most irreparable harm, of course, is the chilling of speech. The record shows through declarations that my clients have stopped engaging in all manner of speech. If there is no constitutional issue, then no harm. But if there is, then it's a... Even under commercial speech, you would have your harm, right? That's correct, Your Honor. How about a balance of equities? The balance of equities, I think, obviously, because we're talking... If it's a constitutional violation of fundamental rights, then the balance of equities is going to naturally fall on the side of my clients. What if it's just a mere commercial speech? If it's mere commercial... I think it's still true, because even if it's commercial speech, we're still talking about protected First Amendment rights, right? If you're violating the First Amendment based on, quote-unquote, just commercial speech, it's still violating the First Amendment. Well, don't we, when a balance of equities, we say, we act to preserve the status quo and minimize harm? Isn't that what we do? Yes. And what is interesting about that, Your Honor, is that we were trying to keep the status quo. The legislature chose to adopt this as an urgency measure that went into effect immediately as Governor Newsom signed it. If it had gone through the normal process, where it would have taken until January 1st or perhaps July 1st, we would have had the time, and the status quo never would have changed. Really, this status quo that we sit in right now only exists because it went as an urgency measure. It didn't need to... There was really no reason for it to take that tact, and we could have been preserving a status quo where the law didn't exist. And I would also add... Sorry. Go ahead. I would also add that preserving a status quo that silences my clients would not be just. And as to the public interest? As to the public interest, again, if we're speaking about a violation of the First Amendment, even if we're talking about commercial speech, I think the public interest is on the side very clearly of protecting constitutional fundamental rights, and that the public interest would fall on our side. And I would also say that if the court rules with appellants and grants this MPI, you're not going to see some massive harm to the state, A, because enforcing unconstitutional laws doesn't harm the state, naturally, but also because we're talking about an interest that the state has in preventing gun violence that they haven't really shown is directly linked to this advertising that they're trying to ban. Unless the court has other questions, I'd like to reserve the remainder of my time. Great. Thank you.  Good morning. Gabrielle Butan on behalf of California Attorney General Rob Bonta. This is an appeal from an order denying a motion for preliminary injunction. Such orders are only subject to reversal for abuse of discretion. Here there is no abuse of discretion in the district court's ruling. Section 22949.80 is a narrow measure that restricts only advertisements for defined firearm products that are directed at children. The statute regulates only commercial speech, and it does not regulate noncommercial political speech related to firearms. As a result, under the applicable Supreme Court and Ninth Circuit precedents, the statute is subject to central Hudson scrutiny, which it satisfies. The district court properly applied this legal standard. We therefore ask this court to affirm the district court's order denying the preliminary injunction. With that, I would be happy to respond to any questions that the panel may have. How does this law directly advance the state's goal here, maybe more specifically? Is there any evidence that a minor has unlawfully purchased a gun in California? I think this actually might relate a little bit to Judge Smith's questions. Because it has to do with what type of review are we doing? Before you get to that, is there anything in the record that shows in the state of California a minor has unlawfully purchased a firearm? There is not evidence in the record of that specific incident. However, the case law, such as in Edge Broadcasting by the Supreme Court, discuss this issue of do there have to be specific incidents in the past record of the incident happening? In that case, it had to do with restricting radio ads for buying lottery tickets. The court upheld that law. The court talked about how there was no discussion of evidence in the record of that having happened before someone being stimulated to buy a lottery ad, buy a radio advertisement. The court also talked about how it is permissible under central Hudson scrutiny for the legislature to take action with the thought that it will benefit the public at large or there will be a general effect. It doesn't have to, in every single circumstance, cause the desired result. What is the state's position on how this is not so much about minors unlawfully buying advertisements, so is it on theory that lawful, truthful advertisements about guns that may be reasonably attractive to minors stokes demand for guns among minors or increases gun violence among minors? The idea is that these ads, I want to get my language correctly because it sounds like you were trying to get some specificity, but it's that the ads lead to minors' illegal acquisition and illegal use of firearms. The case law supports this idea of dampening that demand by restricting advertisements. Again, there's edge broadcasting, there's the Lorillard case, which has to do with restrictions on advertising. Could you, you know, minors misuse, unfortunately, lots of things, right, including cars. Could California pass a law that banned advertising of vehicles aimed at minors under the idea that some minors misuse cars and therefore we're just going to ban all advertising of vehicles that might be geared towards minors? Could they do that? So, my understanding of your question is the idea would be that the consequence, the harm that is trying to be alleviated is car crash fatalities and injuries caused by minors in particular. I assume that would be kind of justification. No, just assume that minors misuse cars sometimes. I have children and I think that's true. If we're talking about the direct advancement prong of Central Hudson, I think it may pass that. I think... What about the overbred? That's where I think that could possibly be an issue and I think why... Why would that not be similarly true here? Because, I mean, if you look and the legislature actually said that they had a compelling interest in ensuring the minors do not possess these dangerous weapons, but the legislature didn't even seem to be targeted necessarily, or at least they were inconsistent about whether they were targeting illegal possession, or you agree that you can have lawful possession as a minor. Yes. So, they seem to be just targeting lawful possession, at least in part, at least there's some language to that and I can understand why this is it, but even assuming the legislature had only been wanting to target unlawful possession, but had something that says you can't advertise it at all and it bleeds over into lawful possession. Why is that not a problem? It seems like it would be with cars, or soft drinks, or a number of... Well, I think there are... Violent video games? First, to go to the initial part of your question, even if there is language about possession generally, their concerns were about violence caused when the acquisition or the possession was illegal. So, school shooters, for example. Well, they have two concerns, I'm going to hold you to their language a little bit. There's an and here, they have a compelling interest in ensuring that they don't possess them. They didn't say illegal, they said don't possess, and then also in protecting citizens, especially minors, from gun violence. But those were independent-like concerns, it seems like. You're kind of merging the two together and you're saying that it's a possession, that it's only possession that results in gun violence, but that's not what they said. Well, Your Honor, I think the statute speaks to that issue by the fact that there is an exception in the statute for activities in which youth are using firearms legally, which has to do with programs for education, hunting, shooting, so certainly that provision would be at odds. If you just advertise a .22 Henry lever-action rifle, which I think would be legal in California for... It looks like an old Western gun, kind of, with a kid, because it's a .22 caliber. I think that would be illegal under this, you know, if it doesn't have anything to do with trying to promote safety or trying to promote some kind of group or something, it would be illegal. It has a picture of a young child hunting rabbits with a .22 rifle or something like that, which would not be illegal, necessarily. That's right, Your Honor. But their hunting would not be illegal, but the advertisement would be, correct? Well, I think you would have to look at the factors and you'd have to look at the very specific ad. The factors get pretty specific in terms of a lot of other issues other than just the main subject of the ad. So is your argument, just to be clear, is your argument that this only reaches advertisements that are asking, that are, like, intentionally encouraging children to engage in illegal violence? I don't think that's right, right? No, no. And so, I mean, so are you even disagreeing, that there, are you, are you, is your position that you can't, that this, do you disagree that this would cover advertising firearms to minors where you're just advertising a firearm? There's instances where this would cover, you know, you're saying we have to look at the factors, et cetera, but do you agree that, like, it would actually cover advertising something to a minor where the minor, you know, if the minor responded to that advertisement, the minor would be engaging in a lawful activity, say, rabbit hunting with, I don't know. Again, I think it depends on the specific ad that you're looking at, but I think it is possible that that may be the case in certain instances. But my response to that would be that a perfect fit is not required. Yes, you look to over-inclusiveness and under-inclusiveness, but this is not strict scrutiny. And it only has to be a reasonable fit, which means there could be some over-inclusiveness. So, for example, in Edge Broadcasting, part of the claim was that it was over-inclusive because there were people who would hear the radio broadcasts that were in states in which lotteries were legal. And that was not the intent of the statute, but the court still said it was, the court still found there to be a reasonable fit. And in the tobacco advertising cases, again, there were, there were regulations that were also targeted at adults, so legal behavior, whether it be giving out samples, whether it be keeping the products behind the counter. But so there is over-inclusiveness in, that is allowed in these cases under Central Hudson Review. So there will be certain cases that may be borderline in terms of, is it a fit for the interest? But that doesn't mean that the law should not be upheld. So if there was an advertisement that said a hunting rifle has less recoil, so it's young, minor hunters, it would be easier for them to use to go hunting. If there was an advertisement like that in Junior Sports Magazine, Sportsman Magazine, would that be unlawful under this law? Again, I think you'd have to look at the totality of the circumstances. I think it's possible that that could be one consideration that the court undertook. But so if you said that, so I think if there were aspects of the ad that looked like they were supposed to appeal to a child audience, that the child was supposed to read that. Yeah, the gun, these guns are better for minors. Then yes, I think it would fall under that. But I think there could also be certain aspects of the ad in terms of the context, the design, that the text itself, that made it more clear that it was, it was, that made it not attractive to a child. So I mean, I think it again, I think there's certain circumstances where there may be something directed. It says at the bottom of it, you know, we, this is an advertisement for children because we really, they're hunting with their parents, you know, and following the laws because their lawyers got involved and following the laws because we think this gun will be really good for, you know, having less recoil and help you to have a better aim. So, you know, just to push back on, I, you know, the problem is, is like, it almost sounds like, I mean, who, if you're a fire industry lawyer, you're, you keep saying, well, you have to look at all the, I mean, so in order to engage in this speech, you're kind of, the way you're presenting it, you're, you're, you're out there and, and you have no idea what the result's going to be at court. I'm not sure it's actually as vague as you say. I think it may be actually more clear that it does ban it, but even assuming it's as vague as you say, it's not a problem. No, no, I don't think, and I, I didn't mean to give that impression. I just, it's difficult to discuss hypotheticals when there are several factors and it is a totality of the circumstances test. But I think when we talk about vagueness, you know, excuse me. So with respect to vagueness, I mean, first of all, what it sounds like you're discussing is a fair notice issue with the factors. And my first response to that would be, that's not an argument that the plaintiff's made. They discussed arbitrary enforcement. I'm not actually super interested in vagueness. I'm just saying that you are really emphasizing the vagueness of the statute in order to get away from our hypotheticals and that seems to work against you. I certainly don't mean to do that. I mean, the standard is, is whether it is attractive to a child. And it certainly is the case that in certain circumstances, such as if there's a statement in there that is meant to speak directly to a child, yes, that probably, perhaps certainly is, would fall under the statute. So to get away from my hypothetical, if you were advertising a firearm and you're clearly trying to advertise it to a child audience for a clearly lawful purpose, let's just say those two things, then you acknowledge that this would cover some of those instances. It would. And part of that is because the statute does also cover advertisements that are designed or intended to be attractive to children. So obviously, a lot of these situations would be covered under those provisions. And again, I think because you don't have to have a perfect fit, because it's not strict scrutiny that's involved, it's okay that there are going to be some circumstances in which there could be, one could argue, it's more about legal use by a child and it's perhaps less likely to cause the results that the legislature is concerned about. I've let my colleagues talk because I didn't, they didn't say much when the other counsel was up, so I thought they ought to have a chance to get on the record here. I want to come back to my questions. It seems to me this is a preliminary injunction. I've got to think about four questions, very, very difficult. And if this is commercial speech, and that's your argument, they argue higher scrutiny because that would be better for them. But if we go with your argument about commercial speech, we're not in the higher scrutiny. It seems to me then we're, is it lawful? I can't find that this is not lawful. It certainly has, it bans lawful speech. It bans speech that could be made for lawful purposes. So is it lawful is met. Is it misleading? Frankly, truthful, it seems to me it bans truthful speech. So at that point, we're at the three different tests that I have to do in order to meet the commercial speech test. So the first one is, does it directly advance California's interests? Is that a legal question? I don't know of a case on point with that question. I'll tell you, there is one. It is Safari Club. And it is Alliance for Wild Rockies versus Cottrell. They both say they're legal questions. And the reason I said that is because that fashions our review. If it were like a jury makes a determination when they're given the law, then it would be abuse of discretion, hard standard to meet. But where it's a legal conclusion, we can look at this law and see if it really goes where it's supposed to go. And that's why I thought it was interesting how you answered my colleagues' questions. Because they're really looking at it, does it really advance California's interest? And that's the worry we have in this situation. If we're to make that determination. So what's your best argument about that? I think you have to look at the way that courts review these cases and the decisions themselves. I am. That's what I'm trying to bring to your attention. Sure, and I'd like to explain our position on how that's been done. I don't disagree, per se, that it's a legal question. But the way that the courts review these is not to take factual evidence, but they look at the legislature's decisions, what they base it on. So again, Edge Broadcasting, they did not have evidence ahead of time about whether these radio ads would affect purchasing lottery tickets. In the Educational Media v. Swecker case, there was not factual evidence introduced during the record in the district court about whether advertisements for alcohol in college publications would affect the underage drinking of the students. That's not how the courts review these cases. The problem that I have with this is that it is absolutely a right that's granted by the Constitution to have advertising, a right to have commercial speech. And we're supposed to deal with that as if you're taking that speech away, and I'm supposed to find pretty clearly, it seems, that it advances California's interest, that there isn't some other thing on the books that would say it doesn't advance California's interest at all. And that's my worry about this particular instance. If we go to the next, not more extensive than necessary, how can you say this is not more extensive than necessary? Well, I think that is the technical term of the prong, but I think the courts have made clear in the Fox case, and this court, I think, made clear in Whiting. You cite, to get to those, alcohol, tobacco, all that kind of stuff, but we're not citing something that is dead on a constitutional right to use a gun. Yes, Your Honor, but I think it is commercial speech. Can I add to that? Because that just really gets to sort of, even putting aside that constitutional right to have a gun, I think you keep citing the smoking or alcohol or these. But I think it's intuitive. Maybe the reason that you don't have courts looking, it's intuitive in those contexts that if you put up an advertisement in the school saying, buy your camels cigarettes across the street, that you're going to increase demand. I don't, at least for me, it's not at all intuitive. I mean, junior sports, I've never heard of the magazine before. It's not, I'm not, you don't see, it's not intuitive to me that advertising is even driving hardly any of the youthful demand, which is unfortunate for junior sports magazine, I assume. But like, what is driving youthful demand? We don't have time, so I'll tell you. I mean, what's driving youthful demand is movies and video games and Call of Duty and stuff. That's what, so what do I do with the fact that like, it just seems like this law is like this weird law that, that doesn't, like, whereas if you're trying to ban cigarettes in school, you know, cigarette advertisements in school or cigarette advertisement, whatever, that seems to have a lot more direct relationship. This law is really missing a direct relationship, it seems like. Your Honor, I would say that you could say the same thing as far as seeing the products used in movies and video games and other places about, about smoking prior to, prior to a lot of the laws that have come out. Certainly these days, with regard to alcohol, you see that a lot of places. I think, I think, no one to dispute, there are a lot of products that advertising plays a role and other influences play a role. And I, and I believe it's Edge Broadcasting that talks about it doesn't have to be the ones, it doesn't have to be the one solution that takes care of everything. But if it contributes to help advancing that interest. I understand, I understand, you can, you can do things piecemeal, because after all, they can only do, but this, I thought that would be your answer. But the problem with that answer is that, what do we do if like, if you, if I think that, you know, 99% of demand for some product is driven by something entirely different. And there's really hardly any demand being driven by, by the thing that's actually being banned here. And then, and then you, you couple that with the fact that the legislature, there's stuff in the, that the legislature both said in the law itself, but also in legislative history that seems like it's really trying to, you know, it's, it's not, it's, it's trying to even, it actually is targeting lawful activity, like it actually wants to target lawful activity, not just unlawful activity. I disagree with the statement that it's trying to target lawful activity. But you agree that the legislature said that, like it said that it wanted to, you know, the language about possess, it didn't say unlawful possession, but it just wanted to go after possession by, possession of a firearm by minors. I'm sorry, I'm not aware of where in the legislative record that statement's made. It's in, it's in Excerpt from Record 1018. It says, when they enacted it with intent to further restrict the marketing advertisement of firearms to minors and to advance the compelling interest in ensuring that minors do not possess these dangerous weapons. I'm sorry, Your Honor, without, without seeing the context of that, I don't, I don't dispute that that's in the record. And, and I trust you that's in the legislative record. But I don't dispute it's in whatever report or statement that you state it's in, but I don't know what, I can't concede that it was stated in a context that, that I'm unaware of. Great, thank you. Okay, thank you. I'd just like to make three very brief points in response to some of the questioning that I just heard and some of the questions that came up earlier. Thank you, Your Honor, for pointing out Safari Club and Cottrell. I think appellants would also point to Laura Lard, Laura Lard as helpful in, to this court in applying a legal standard to the central Hudson tailoring analysis. Also, with regard to, I'm not trying to bring this back into strict scrutiny, but I would like to make a quick point about the fact that the things that I kept hearing my colleagues speak about with regard to, it's a, it's a totality of the circumstances test. You have to look at every single advertisement to determine whether or not it violates the law. That shows you very clearly that this is content based. And when it's content based, and worse yet, viewpoint discriminatory like this law is, we should be using a straightforward First Amendment strict scrutiny analysis. And under that, we definitely win. But again, my third point is obviously that when we go to Central's Hudson, we're not just talking about some reasonable fit willy-nilly. This has to be narrowly tailored. And the court, a district court decision in, a district court decision in Tracy Rifle was really clear in a First Amendment case sort of like this one. When the state has access to tools to directly attack the harm they're speaking of, here, gun violence for instance, they have to resort to those and not go to speech indirectly to dampen demand. What we can't do, what the state cannot do is ban this non-misleading speech about the availability of legal products. And this is speech, again, directed both to minors and adults. In closing, it is not a crime to encourage young people to engage in the shooting sports. And the government cannot, in line with the First Amendment, punish the firearms industry and only the firearms industry for encouraging young people to shoot with legal firearms that come in sizes appropriate to their size. This is a violation of the First Amendment, and this court should not be shy to overturn the district court's decision. Thank you. Thank you to both for the very helpful argument. The case has been submitted.
judges: SMITH, LEE, VANDYKE